[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 771 
Agri-Business Supply Company, Inc. filed an action against Fletcher Hodge to recover $4,600 on an open account. Hodge answered by denying plaintiff's claim and then filing a counterclaim in which he alleged that certain equipment he purchased from plaintiff was not merchantable and not fit for the purpose for which it was intended, and neither did the equipment comply with the express warranties made on it.
After a trial the jury returned a verdict in favor of defendant on plaintiff's claim and in favor of defendant on his counterclaim in the amount of $50.
Plaintiff's motions for a directed verdict, judgment n.o.v., or, in the alternative, for a new trial, were denied and it appeals.
The evidence shows that plaintiff, Agri-Business Supply Company, Inc., was in the business of selling equipment for use in poultry production. Defendant, Fletcher Hodge, was involved in raising chickens for sale. In April 1978 Hodge contracted with Agri-Business, through its agent, to furnish and install certain equipment in two chicken houses that were being built for him. The price of the equipment installed was $24,270.51. Hodge paid $20,000 on the equipment but refused to pay the balance because the equipment was defective and did not operate properly.
Hodge testified that he told the salesman for plaintiff that he intended to raise broilers and replacements, and that he wanted equipment that would do this job. He said from the moment he started using the equipment he had problems with it. The principal objection was the failure of the feeders to operate properly. He said when the feeders malfunctioned the feed would pile up in one spot and the chickens would flock to that spot and would be suffocated while trying to get to the feed. He lost thousands of chickens as a result of suffocation due to the defective feeding equipment.
Hodge said that plaintiff did replace some of the equipment but it continued to malfunction. Hodge said that his problems with plaintiff's equipment did not cease until he replaced it with equipment from another company.
Plaintiff argues first that the trial court erred in allowing the jury to decide if plaintiff had violated the implied warranty of *Page 772 
fitness for a particular purpose in the sale of the poultry equipment to Hodge.
Section 7-2-315, Code 1975, provides as follows:
 "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 7-2-316 an implied warranty that the goods shall be fit for such purpose."
Plaintiff says there is no evidence that plaintiff knew the particular purpose for which the equipment was being purchased or that Hodge was relying on plaintiff's skill and judgment in selecting and furnishing suitable equipment for raising chickens.
Hodge testified that he talked to Jasper Reid, who represented plaintiff, in February 1978 about furnishing and installing equipment in two chicken houses where he intended to raise broilers and replacements. Mr. Reid informed defendant that such equipment could be supplied.
Plaintiff, who has been in the business of furnishing and installing equipment in chicken houses for over thirty years, did install the equipment ordered by defendant, and, as testified to by a witness for plaintiff, the equipment was suitable for feeding broilers and pullets.
Defendant testified that he relied on the skill and judgment of the plaintiff to furnish the type of equipment he needed to raise the kind of chickens he told Reid that he planned to raise. Defendant also testified that he had bought chickenhouse equipment from plaintiff and Reid in years past. Moreover, defendant said that he told Reid this time that he wanted a package deal, that he did not even want to supply the light bulbs.
We find the evidence sufficient to warrant submitting this issue to the jury.
Plaintiff's next contention is that the trial court erred in submitting to the jury the issue of whether defendant could recover for violation of the implied warranty of merchantability of the goods sold to defendant.
Section 7-2-314, Code 1975, provides:
 "(2) Goods to be merchantable must be at least such as:
 "(a) Pass without objection in the trade under the contract description; and
". . . .
 "(c) Are fit for the ordinary purposes for which such goods are used. . . ."
To establish the existence of an implied warranty of merchantability, the defendant must reasonably satisfy the jury that the plaintiff sold the equipment to him and that plaintiff was "a merchant with respect to goods" of the same kind as the equipment sold to defendant. See Storey v. Day Heating AirConditioning Co., 56 Ala. App. 81, 319 So.2d 279 (1975); §§7-2-104 (1) and -314 (2)(a), (c), Code 1975. Also, in order to prove the breach of such an implied warranty, the defendant must reasonably satisfy the jury that the equipment he purchased from plaintiff is not fit for the ordinary purposes for which such equipment is used. Smith v. Crosrol, Inc.,498 F. Supp. 697 (M.D.Ala. 1980).
The evidence is undisputed that plaintiff is and has been for a number of years in the business of selling equipment to people who raise chickens. It also appears that the equipment sold to defendant could be used in feeding pullets and broilers.
The defendant testified that he had trouble with the equipment he bought from plaintiff during the entire time it was in his chickenhouses and that the equipment was defective and did not operate as he had been told it would operate.
Based on this evidence we conclude that the trial court properly submitted this issue to the jury.
Agri-Business's next contention is that the court erred in granting Hodge's requested jury charges numbers 3, 4, 5, 7, 8, 9, 12, 13A, and 14. Agri-Business contends that it properly objected to and excepted to these charges to the jury, as is required by *Page 773 
law in Alabama, so that these charges are properly reviewable by this court. Moreover, plaintiff contends that it has also assigned the granting of these requested charges as grounds for error on appeal.
Rule 51 of the Alabama Rules of Civil Procedure states in pertinent part:
 "No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection." (Emphasis added.)
Agri-Business's objection to jury charge number 5 stated only that it was "confusing." It is settled law in Alabama that:
 "[T]he purpose of stating grounds for objection is to give the trial court the opportunity to correct the instructions and to avoid the waste of time from reversals that result from technical omissions or oversights."
Crigler v. Salac, 438 So.2d 1375 (Ala. 1983). Moreover, inCrigler, supra, the court stated that the objection "did not adequately inform the trial judge of any potential error or afford him an opportunity to correct any such error." Further the court noted the objection failed to assign errors specifying how the charges were erroneous or how they misstated the law.
Crigler is dispositive of given charge number 5 because plaintiff failed to inform the trial court in what way charge 5 was "confusing" and thereby failed to give the court an opportunity to correct any error, if in fact there was error.
As to charges 3, 4, 7, 8, 9, 12, 13A, and 14, we consider the objections made to them to be sufficient to preserve them for appeal. Crigler, supra. However, the Alabama Supreme Court has held that "when we do examine charges asserted to be erroneous, we look to the entirety of the trial court's charge to see if there was reversible error." Nelms v. Allied Mills Co.,387 So.2d 152 (Ala. 1980). Even in this context, reversal will occur only when the error is considered to be prejudicial.Underwriters National Assurance Co. v. Posey, 333 So.2d 815
(Ala. 1976). Therefore, we shall examine the remaining objected-to charges in the light of these principles.
Plaintiff argues that the granting of jury charge 3 constituted reversible error because it deals with agency and there was no proof of agency at trial. We find that there was proof of an agency relationship between Mr. Reid and Agri-Business at the time Reid sold the equipment to defendant and, therefore, the charge is not erroneous. Posey, supra.
Likewise, charge 4, which deals with Reid's relationship with plaintiff at the time of the sale of equipment to defendant, is also not erroneous. It is the duty of the jury to apply the facts to the law as given to it by the court. McArdle v. State,By and Through Alabama State Docks Department, 408 So.2d 491
(Ala. 1981). Here the court instructed the jury on the law of agency and the jury applied the facts before it to that law. Again, there was evidence of an agency relationship between Reid and plaintiff.
Plaintiff next contends that charge number 7 was an incorrect statement of the law and an incomplete definition. Charge number 7 was another definition of the term "merchantability." The trial court instructed the jury that the term means that a good sold carries with it an inherent soundness which makes that good suitable for the purpose for which it was designed. We held in Wetzel v. Bingman Laboratories, Inc., 39 Ala. App. 506, 104 So.2d 452 (1958), that merchantability "refers to the acceptability for commerce, . . . it connotes a quality of inherent soundness . . . as of being of average suitability to the market." We consider charge number 7 similar to the one inWetzel and, therefore, not an erroneous charge.
Plaintiff next says that charge number 9 is inappropriate in this case because defendant intended to use the equipment for more than one particular purpose. *Page 774 
Charge 9 was on the subject of an implied warranty for a particular purpose. The court in this instance gave a verbatim definition of implied warranty from section 7-2-315, Code 1975. This section provides:
 "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." (Emphasis added.)
The facts in the case at bar show that defendant told Reid that he was going to raise broilers and replacements and that he wanted equipment to do this job. Defendant was told that the equipment he bought would do the job. It also appeared in the evidence that the equipment sold to defendant was also suitable for feeding broilers as well as pullets. No error here.
Plaintiff's next contention is that charge number 12 is an incomplete statement of the facts and the agreement between plaintiff and defendant and should have been refused by the trial court. Charge 12 instructed the jury that if they were reasonably satisfied from the evidence that plaintiff's equipment did not meet the required standards then the terms of the sale of that equipment had been breached and they could find for defendant on plaintiff's claim. As noted above inMcArdle, supra, it is well settled that the jury are the fact finders and must apply the law given by the court, through its charge, to the facts in the particular case. It is not the responsibility of the judge to do this for the jury. We find nothing in charge number 12 that is contrary to this rule. No error here.
Plaintiff's final contention is that jury charges 13A and 14 were inadequate and prejudiced the jury against plaintiff. Charges 13A and 14 instructed the jury on the measure of damages in a breach of warranty case and defined incidental and consequential damages. Plaintiff argues that there was no showing of value at the time of the sale and that there was no allegation or proof as to incidental or consequential damages. Defendant proved that not only did the equipment bought from Agri-Business not function properly, but he was forced to replace certain parts, repair the machine numerous times, and lost literally thousands of chickens because of the malfunctioning equipment. We consider that the charges were adequate as to defining incidental and consequential damages and we cannot find that these charges prejudiced plaintiff in any way. Moreover, we do not consider plaintiff's argument that no definition or explanation was given to the jury as to what incidental and consequential damages really are to have any merit. Jury charge number 14 is verbatim from section 7-2-715, Code 1975, and describes what both incidental and consequential damages to a buyer will include.
Plaintiff next says that the trial court erred in overruling its motion for a directed verdict on defendant's counterclaim.
A directed verdict should be granted where there is a complete absence of proof on an issue material to the claim. If, however, there is a scintilla of evidence in support of the claim, the question must go to the jury. Ritch v. Waldrop,428 So.2d 1 (Ala. 1982).
As noted above there was sufficient evidence adduced on the defendant's counterclaim to authorize its submission to the jury. The refusal of the directed verdict motion was not error.
Likewise, the trial court properly overruled plaintiff's motion for judgment n.o.v. Such a motion tests the sufficiency of the evidence in the same way as does the motion for directed verdict at the close of all the evidence. Ritch v. Waldrop,supra.
Plaintiff's final contention is that the trial court erred in overruling its motion for a new trial.
The verdict of a jury is presumed correct and no ground of a motion is more carefully scrutinized than that the verdict is against the weight of the evidence, and the presumption of correctness is strengthened *Page 775 
when a new trial is denied. Walker v. Cardwell, 348 So.2d 1049
(Ala. 1977).
As observed previously, the weight of the evidence preponderates in favor of the jury's verdict and, therefore, the trial court properly overruled the motion for new trial.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.